UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARNELL BROWN,

    Plaintiff,

v.

SONIA WARCHOCK,
TIMOTHY S. FLANAGAN,
GEORGE STEPHENSON, and
KRISTOPHER STEECE,

    Defendants.

Case No. 21-11423
Honorable Laurie J. Michelson
Chief Mag. Judge David R. Grand

**OPINION AND ORDER OVERRULING OBJECTIONS [42] AND DISMISSING COMPLAINT WITHOUT PREJUDICE**

Darnell Brown filed this lawsuit alleging, among other things, that in March 2021, Sonia Warchock and Timothy Flanagan, two members of Michigan's Parole Board, ordered him to attend a substance abuse treatment class as a prerequisite for parole consideration. At that time, Brown was at the Macomb Correctional Facility (MRF). And, according to Brown, MRF was on COVID-19 outbreak status. Brown says he asked if he could attend the class outside of prison, but Warchock allegedly "declined" that request "and ordered that [Brown] continue the unnecessary risk of [contracting] COVID-19." (ECF No. 28, PageID.133 (summary judgment response brief).) Brown says he also wrote to MRF Warden George Stephenson and MRF Deputy Warden Kristopher Steece about having to attend classes while the prison was on outbreak status but that he never received a response from them. (ECF No. 1, PageID.3.) The class was, apparently, two months long. And while it is not clear if

it was from attending the class, Brown says he has "contracted both Delta and Omicron variants" of COVID-19 while in prison. (ECF No. 28, PageID.133) It appears that Brown also asserts that when he raised his concerns about COVID-19 to the instructor of the class, she removed him from the class, which, in turn, extended his stay in prison. (*Id.*) Brown has thus sued Warchock and Flanagan, as well as Stephenson and Steece, for violating his rights under the Eighth Amendment.

I.

All pretrial matters were referred to Chief Magistrate Judge David R. Grand. (ECF No. 19.) On September 21, 2022, Magistrate Judge Grand issued a report and recommendation to grant Defendants' motion for summary judgment on the basis of non-exhaustion. (ECF No. 39.) Because the report and recommendation was served by mail, Brown had 17 days to file his objections, *see* Fed. R. Civ. P. 6(d), which was October 8, 2022. Because October 8 was a Saturday, Brown's objections were due on Monday, October 10. *See* Fed. R. Civ. P. 6(a)(1)(C). Eight days after that deadline, on October 18, the Court noted that no objections had been docketed and so it decided to adopt Magistrate Judge Grand's report and recommendation. (ECF No. 40.) The Court's order was docketed and mailed to Brown on October 19.

The next day, October 20, the Court received a copy of Brown's objections. They are dated October 9, 2022. (ECF No. 42, PageID.205.) Thus, under the prison mailbox rule, the objections were presumptively filed on October 9. *See Houston v. Lack*, 487 U.S. 266, 271 (1988) (holding that mailbox-filing rule applies to notices of appeal and explaining, "the pro se prisoner has no choice but to entrust the forwarding of his

2

notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay"); *Richard v. Ray*, 290 F.3d 810, 813 (6th Cir. 2002) ("[W]e hold that *Houston v. Lack* applies to civil complaints filed by pro se petitioners incarcerated at the time of filing."). Accordingly, the Court will grant Brown's motion for reconsideration (ECF No. 43), consider Brown's objections, and review de novo the issues he raises in his objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

## II.

### A.

As background, the Court briefly summarizes Defendants' summary-judgment motion, Brown's response, and the Magistrate Judge's report.

Defendants sought summary judgment on the grounds that Brown did not exhaust his administrative remedies. Brown filed at least three grievances relating to the parole-eligibility class and COVID-19. (*See* ECF No. 25-3, PageID.114, 119, 124.) But Defendants argued that among the grievances that Brown filed while at MRF, he only pursued three of them through to the third and final step of the grievance process. (ECF No. 25, PageID.85–86.) And while Brown may have appealed those three grievances through the final step of the process, he did not do so before filing this lawsuit. (ECF No. 25, PageID.86.) This was problematic for Brown because, according to Defendants, the law required Brown to complete the grievance process before filing this suit. (*See* ECF No. 25, PageID.88 (citing *Porter v. Nussle*, 534 U.S. 516, 523 (2002)).) As Brown did not exhaust administrative remedies for his claims

before suing, Defendants argued that Brown's complaint had to be dismissed. (*See* ECF No. 25, PageID.85–86, 88.)

Defendants also raised a second, separate non-exhaustion argument. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Kitchen v. Snyder*, No. 20-1936, 2021 WL 4470032, at *3 (6th Cir. June 23, 2021) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). And under the MDOC's grievance policy, "names of all those involved in the issue being grieved are to be included" in the grievance. Policy Directive 03.02.130 ¶ S (eff. Mar. 18, 2009).[1] According to Defendants, examining the three MRF grievances that Brown pursued through step three reveals that only one of them, Warden Stephenson, had been named in any of those three grievances. (ECF No. 25, PageID.94–95.) Thus, Defendants Warchock, Flanagan, and Steece argued that Brown's claims against them had not been properly exhausted for this additional reason. (*Id.*)

As for Stephenson, he presented a different, alternative non-exhaustion argument. The MDOC's grievance policy states, "Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs." Policy Directive 03.02.130 ¶ Q; *see also id.* ¶ J.4. And in the one MRF grievance appealed through step three that named Stephenson, the MRF grievance coordinator rejected the grievance at step one

---

[1] The grievance policy directive is available at (ECF No. 25-2.)

because Brown had not attempted to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue. In particular, she wrote, "There should be an attempt to resolve issue prior to filing a grievance. There is no evidence of this happening; therefore, GRIEVANCE IS REJECTED." (ECF No. 25-3, PageID.120.) Thus, in addition to the sued-too-soon argument, Stephenson argued that even though he was named in a grievance appealed through step three, that grievance did not properly exhaust Brown's claims against him. (ECF No. 25, PageID.94.)

Brown made a few arguments in response to Defendants' motion for summary judgment. For one, he asserted that he was in imminent danger and referenced 28 U.S.C. § 1915(g). (ECF No. 28, PageID.32.) Brown's point, apparently, was that if he was in imminent danger, he should not be required to undergo a proper grievance process before asking a federal court for assistance. Brown also argued that the MDOC grievance policy prohibits grieving a parole-board decision. (ECF No. 28, PageID.134.) Brown's point, apparently, was that parole board members ordered that he take a class to become parole-eligible, so the issue was not grievable. Third, and in response to Defendants' failure-to-name argument, Brown referenced a paragraph of the grievance policy providing that grievances about "issues not within the authority of the Department to resolve" are subject to rejection and that for those issues, the "grievant shall be told who to contact in order to attempt to resolve the issue, if known." (ECF No. 28, PageID.134.)

5

Magistrate Judge Grand considered each side's position and concluded that Defendants' had more merit.

Regarding Defendants' sued-too-soon argument, the Magistrate Judge stated, "none of the grievances at issue were properly exhausted before Brown commenced this action." (ECF No. 39, PageID.192.) The Magistrate Judge also remarked on Defendants' alternative argument: "Generally speaking, Brown's failure to identify a specific individual at Step I would result in a failure to exhaust as to that individual." (ECF No. 39, PageID.193.)

Turning to Brown's arguments, the Magistrate Judge reasoned that the imminent-danger provision of § 1915(g) related to the three-strikes rule, not exhaustion. (ECF No. 39, PageID.192.) He further explained that "[t]he PLRA does not excuse exhaustion for prisoners under imminent danger of serious physical injury." (*Id.*) As for Brown's argument that the claims raised in this suit were not grievable because they were due to a decision of the parole board, the Magistrate Judge noted that the grievance policy merely stated that a grievance would be rejected if "[t]he prisoner is grieving a decision made by the Parole Board *to grant, deny, rescind, amend or revoke parole*, or not to proceed with a lifer interview or a public hearing." Policy Directive 03.02.130 ¶ J.10 (emphasis added); (ECF No. 39, PageID.194). And said the Magistrate Judge, "the decision Brown challenges—i.e., the decision of [parole board members] Warchock and Flanagan to require him to attend certain classes 'in a congregate setting where social distanc[ing] is

6

impossible'—is not a decision 'to grant, deny, rescind, amend or revoke parole[.]'" (ECF No. 39, PageID.194.)

In all, the Magistrate Judge recommended granting Defendants' motion for summary judgment on the basis of non-exhaustion. (ECF No. 39, PageID.195.)

## B.

Brown objects. Brown appears to make four objections: (1) Steece was improperly involved in the grievance process (ECF No. 42, PageID.202; *see also id.* at PageID.203); (2) two grievances were erroneously rejected for not first attempting to resolve the issue with the staff member involved (*id.* at PageID.202); (3) under the grievance policy, this try-to-resolve-it-first requirement does not apply to issues "believed to fall within the jurisdiction of Internal Affairs," and his issues were for Internal Affairs (*id.* at PageID.202); and (4) his grievances were timely because they were about an ongoing wrong (*id.* PageID.204).

### 1.

None of these arguments are proper objections because none of these arguments were presented to the Magistrate Judge. As a general rule, a district court need not consider theories that were not first presented to the magistrate judge. *See Murr v. U.S.*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) ("Courts have held that . . . absent compelling reasons, [the Federal Magistrates Judge] does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate."); *see also Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("Allowing parties to litigate fully their case before the magistrate [judge] and, if

7

unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act." (internal quotation marks omitted)). As Brown's objections present theories that were not presented to Magistrate Judge Grand, this Court declines to consider them. Brown's objections will thus be overruled. *See Boyd v. McCabe*, No. 16-CV-12741, 2019 WL 3852582, at *2 (E.D. Mich. Aug. 16, 2019) (Michelson, J.) ("One primary aim of referring matters to a magistrate judge—especially a non-dispositive matter—is to increase the efficiency of the federal courts. It entirely undercuts that purpose to permit a litigant to run one case by the magistrate judge and another by the district judge.").

### 2.

But even if the Court were to consider Brown's objections, none warrant denying Defendants summary judgment.

To start, the Magistrate Judge is correct that Brown filed this suit before completing the grievance process. The evidence suggests that while at MRF, Brown filed three grievances that he took through the third and final step of the grievance process. (*See* ECF No. 25-3, PageID.110.) For each of these three grievances, Brown's step three appeal was not received by the grievance respondent until June 21, 2021. (*See* ECF No. 25-3, PageID.112, 117, 122.) But Brown filed this lawsuit almost three weeks before that. (*See* ECF No. 1, PageID.6 (U.S. Postal Service postmark dated June 2, 2021).) So even if those three grievances are now exhausted, they were not exhausted before Brown filed this lawsuit. And the Sixth Circuit "has held that a prisoner 'may not exhaust administrative remedies during the pendency of the

8

federal suit.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999)). *But cf. Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017) (permitting plaintiff to exhaust a claim during pendency of suit and then file an amended complaint with the newly exhausted claim *if* the original complaint contains at least one fully exhausted claim). Because Brown sued too soon, his complaint must be dismissed.

None of Brown's four objections alter that conclusion.

Brown's first objection is a bit difficult to decipher. He points out that two of his grievances were rejected because he did not first try to resolve the issue with the staff member involved. (ECF No. 42, PageID.202.) Brown then says that Steece signed and confirmed those rejections in violation of the grievance process. (*Id.*) Elsewhere in his objections, Brown says "Steece signed step 1 denial[,] he is named in this claim." (*Id.* at PageID.203.) So, perhaps, Brown objects that Steece should not have been involved in the grievance-review process because he was one of the people being grieved.

This objection will not be sustained. As discussed, there were three MRF grievances that Brown took through step three. Each was rejected by the grievance coordinator at step one; Steece merely confirmed those rejections. *See* (ECF No. 25-3, PageID.115, 120, 125); Policy Directive 03.02.130 ¶ Y ("The Grievance Coordinator's supervisor shall review the reason for the rejection to ensure it is in accordance with policy; both the Grievance Coordinator and the supervisor shall sign the grievance before returning the grievance to the grievant."). While it may be the case that the

9

person who is the subject of the grievance cannot (or, at least, should not) be a respondent or reviewer of that grievance, none of the three grievances named Steece. (*See* ECF No. 25-3, PageID.114, 119, 124.) So no reasonable jury could find that the grievance coordinator or Steece should have known to exclude Steece as a reviewer. Moreover, the grievances were not denied on their merits, and so Steece's role was limited to deciding whether the coordinator's procedural rejections were proper. *See Lewis v. Decker*, No. 19-2162, 2020 WL 5984757, at \*2 (6th Cir. July 14, 2020) (similar reasoning). On these facts, no reasonable jury could find that Steece precluded Brown from exhausting because he was implicated in the grievances.

In his objections, Brown also implies that his grievances should not have been rejected for not "attempt[ing] to resolve the issue with the staff member involved." *See* Policy Directive 03.02.130 ¶ Q. Two of the grievances that Brown took through step three were rejected on this basis, including Brown's grievance against Warden Stephenson. (ECF No. 25-3, PageID.119–120.) Brown points out in his objections that inmates cannot readily speak to their warden. (ECF No. 42, PageID.202.)

The Court can assume—without deciding—that Brown either (1) satisfied the requirement of "attempt[ing] to resolve the issue with the staff member involved" or (2) did not need to satisfy that requirement. As to the first possibility, a day or two before grieving the warden, Brown filed another grievance about the in-person class and COVID-19. (ECF No. 25-3, PageID.114.) And on that grievance, he wrote that he had talked with the instructor of the class about his concerns. (*Id.*) Although it was a separate grievance, perhaps that should have satisfied the try-to-resolve-it-first

10

requirement. As to the second possibility, the grievance policy provides that "the grievant shall attempt to resolve the issue with the staff member involved . . . unless prevented by circumstances beyond his/her control." Policy Directive 03.02.130 ¶ Q. And perhaps Brown is correct that inmates have no realistic opportunity to sit down with their warden to try to resolve an issue with him.

But even assuming that Brown fulfilled or did not need to fulfill the try-to-resolve-it-first requirement, an exhaustion problem remains for Brown. Exhaustion under the PLRA requires compliance with the MDOC's grievance policy, including the try-to-resolve-it-first requirement. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). So if it is assumed that Brown met or did not need to meet that requirement, Defendants' argument that Brown did not exhaust because he did not meet that requirement falls away. (ECF No. 25, PageID.94.) Remaining, though, would be the fact that of the MRF grievances that Brown took through step three, none were taken through step three before this suit was filed. And, as explained, a prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999)).

Brown's argument about limited access to the warden implicates one other aspect of the exhaustion requirement: inmates only need to exhaust "available" remedies. *Does 8-10 v. Snyder*, 945 F.3d 951, 962 (6th Cir. 2019). Here, the grievance policy required inmates to try to resolve the issue with the staff member involved before filing a grievance, but Brown says he likely would have had limited access to

11

the warden. So perhaps Brown argues that the grievance process was not "available" to him.

The problem with this argument is that Brown could have tried to resolve the issue with others involved with the in-person class. Indeed, in the grievance that he filed a day or two before he grieved the warden, he indicated that he attempted to resolve the issue with the instructor of the class. (ECF No. 25-3, PageID.114.) So a reasonable jury could not find that Brown's limited access to the warden made the grievance process unavailable to him. *Cf. Ross v. Blake*, 578 U.S. 632, 643 (2016) (describing situations where administrative remedies are unavailable, including when prison staff are "unable or consistently unwilling to provide any relief," when "no ordinary prisoner can discern or navigate" the grievance process, and when "prison administrators thwart inmates from taking advantage of a grievance process").

Brown also objects that the issues he grieved were for Internal Affairs. (*See* ECF No. 42, PageID.202–203.) MDOC's grievance policy states, "Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, *unless* prevented by circumstances beyond his/her control *or if the issue is believed to fall within the jurisdiction of Internal Affairs.*" Policy Directive 03.02.130 ¶ Q (emphasis added).

Perhaps Brown, personally, believed that his issues were within the jurisdiction of Internal Affairs. But it would be odd for the try-to-resolve-it-first

12

requirement to depend entirely on a prisoner's subjective "belie[f]" that the issue was within the jurisdiction of Internal Affairs. So absent any argument to the contrary from Brown, the Court reads the language as including some element of reasonableness.

And, here, a jury could not find that it was reasonable for Brown to believe that his issues were for Internal Affairs. A review of the applicable policy directive suggests that Internal Affairs primarily investigates misconduct by MDOC staff and other high-profile issues such as an attempted escape or an inmate death. *See* Policy Directive 01.01.140 ¶ I, J (eff. Aug. 8, 2022). Internal Affairs investigations include "work rule violation[s]," "discriminatory harassment allegations," "PREA-category allegations," and positive drug tests by employees. Policy Directive 01.01.140 ¶ K (eff. Aug. 8, 2022). In contrast, Brown's issue about being required to attend an in-person class during a COVID-19 outbreak seems like a condition of confinement. And prisoners regularly grieve conditions of confinement. Thus, no reasonable jury could be persuaded that Brown did not need to grieve his issues because it was reasonable to think they were issues for Internal Affairs.

Lastly, Brown objects that his claims are about ongoing wrongs or continuing constitutional violations and cites *Ellis v. Vadlamudi*, 568 F. Supp. 2d 778 (E.D. Mich. 2008), in support. (ECF No. 42, PageID.204.) There, a prisoner's grievance complained of untreated pain dating as far back as two years before the grievance was filed; prison officials thus argued that the grievance was not timely and did not exhaust the claims. *Id.* at 781. The court found that the grievance was timely and

exhausted because the inmate had grieved the continued denial of medical care for a chronic medical condition. *See id.* at 783–84. The court reasoned that in contrast to an acute condition like a heart attack, a grievance about a chronic condition "is properly identified as 'ongoing,' and a grievance that identifies the persistent failure to address that condition must be considered timely as long as the prison officials retain the power to do something about it." *Id.* at 784–85.

Even if *Ellis* applies here because there has been an ongoing and continuing requirement for Brown to take an in-person parole-eligibility class, the problem of suing too soon remains. That is, even if Brown filed his step one grievance in a timely manner because his issue was ongoing, that would only mean that he exhausted the claims in this suit; it would not mean that he exhausted the claims in this suit before filing it. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999)).

\* \* \*

In short, Brown's objections raise theories that were not raised in the briefs that the Magistrate Judge considered. As such, the objections are improper. Accordingly, the Court ACCEPTS the Magistrate Judge's recommendation and DISMISSES Brown's complaint WITHOUT PREJUDICE.

And even if the Court were to overlook the procedural issue with Brown's objections, the substance of the objections would not persuade any reasonable jury that Brown properly completed the administrative process before filing this suit or

14

that the process was not available to him. And so the Court would still accept the Magistrate Judge's recommendation and dismiss the complaint without prejudice.

Brown's motion for reconsideration, insofar as it asserts that his objections were timely, is GRANTED. The Court's prior order adopting the report and recommendation (ECF No. 40) and prior judgment (ECF No. 41) are VACATED.

SO ORDERED.

Dated: December 14, 2022

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
